IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

ANGELA ORR                                                                                          PLAINTIFF

v.                                               3:06CV00122-WRW

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY ADMINISTRATION[1]                                       DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action under §1631(c)(3) of the Social Security Act[2] for review of a final decision of the Social Security Commissioner which denied her claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.[3] Both parties submitted briefs, and the case is ready for disposition.

**I. Procedural Background**

Plaintiff filed an application for SSI benefits on December 10, 2002.[4] She alleged that she became disabled on July 1, 2000,[5] and was unable to work because of Crohn's disease and back

---

[1] Michael J. Astrue was sworn in as Commissioner of the Social Security on February 12, 2007. He, therefore, is substituted for Jo Anne B. Barnhart under Fed. R. Civ. P. 25(d)(1).

[2] 42 U.S.C. § 1383(c)(3).

[3] 42 U.S.C. §§ 1381-1382c.

[4] Tr. 44-47.

[5] At the hearing, Plaintiff's attorney amended the alleged onset date to October 31, 2002 (Tr. 306).

pain.[6] Her claim was denied on reconsideration,[7] and a hearing was conducted by the Administrative Law Judge ("ALJ"). The ALJ issued an unfavorable decision on March 6, 2006,[8] and the Appeals Council denied Plaintiff's request for review on June 7, 2006. This was the Commissioner's final decision.[9] It is from this decision that Plaintiff seeks judicial review.

## II. Hearing Testimony

Plaintiff has an eighth grade education,[10] and was 31 years old at the time of the hearing.[11] and was separated from her husband for a year.[12] She has four children; two children live with her and two live with their father.[13]

Plaintiff stated that she sometimes does her own shopping.[14] She drives 15 minutes to and from her children's school, but she cannot drive for an hour and a half non-stop because of her back

---

[6]Tr. 14, 44, 64, 311.

[7]Tr. 28-31, 33-35.

[8]Tr. 9-16.

[9]Tr. 4-6.

[10]Tr. 310.

[11]Tr. 307.

[12]Tr. 307.

[13]Tr. 307-308.

[14]Tr. 309.

and stomach problems.[15] Plaintiff's past relevant work consisted of being a homemaker.[16] She testified that she cannot because of her chronic health problems.[17]

Plaintiff stopped seeing her doctor and taking medicine for her stomach problem because she was pregnant.[18] The last treatment for her back condition was an injection.[19] Otherwise, she did not prescription pain medication for her back pain, but substituted prenatal vitamins, Tylenol, hot baths, and a heating pad.[20]

Her husband, grandmother, and oldest daughter help her with child care and housekeeping.[21] She testified that she left a restaurant job because she had to take numerous restroom breaks and her job duties aggravated her back pain.[22] When asked if she had other problems that kept her from working, she answered that she had been diagnosed with depression. However, she does not believe that she was depressed.[23]

Tyra Watts, a vocational expert ("VE") also testified. The ALJ proposed the following hypothetical findings to the VE: (1) the individual has a bulging disc at the L4/L5, but no finding

---

[15] Id.

[16] Tr. 310.

[17] Tr. 311-312.

[18] Tr. 311-313.

[19] Tr. 313.

[20] Id.

[21] Tr. 314-315.

[22] Tr. 316.

[23] Id.

of impingement or sac impingement; (2) stomach examinations were normal, and Crohn's disease and irritable bowel syndrome were ruled out;  (3) she has a poor work history; (4) she does not take prescription medication; and (5) she suffers mild to moderate pain.[24]

The ALJ  also outlined the individual's  restrictions for the VE: (1) she can occasionally climb, stoop, crouch, and crawl; (2) she is  limited to light work because of the alleged pain, and she cannot lift over 20 pounds; (3) she can work inside where restrooms are available and is allowed regular breaks; (4) she can sit and stand intermittently for six to eight hours, and continuously for one to two hours.[25]  Finally, the ALJ concluded that there was no evidence of an adjustment disorder.[26]

Based on the above hypothetical  findings and conclusions, the VE concluded that an individual with these capabilities could perform the duties of a shipping order clerk and an assembler of small products.  The VE also outlined the number of these jobs available in this state and the national economy.[27]

When the ALJ added  that the mild to moderate  pain is chronic, and she could preform sedentary rather than light work, the VE responded that Plaintiff could perform the duties of a receptionist and a telephone operator which are sedentary positions, that require a minimum level of skill and training.  Again, the VE outlined the availability of these jobs in this state and the

---

[24]Tr. 318.

[25]Id.

[26]Id.

[27]Tr. 319.

national economy.[28]  However, the VE cautioned that Plaintiff would be disabled if her pain is classified as  moderate to severe, and if the pain affects her concentration and reliability.[29]

**III.  Summary of Evidence in Record**

Plaintiff was treated, at Baptist Memorial Hospital on May 23, 2000, for probable Crohn's disease while she was suffering from significant abdominal pain related to an appendectomy.[30]  On July 31, 2000, she was seen for a follow-up where she complained of constant loose stools and some bleeding. [31]

Plaintiff was seen at Baptist again, on October 3, 2001, complaining of back and leg pain and  was assessed with a thoracic strain.  Flexeril, Medrol Pak, and Lorcet Plus were prescribed.[32]  The x-rays of the AP and lateral views of the dorsal spine were negative for acute change or other abnormality and three views of the lumbar spine did not show acute or chronic abnormalities.[33]

Plaintiff reported to Baptist after falling from a horse.[34]  The x-ray taken on November 18, 2001, showed the following:   a normal lumbar spine; well maintained vertebral body heights and

---

[28] Tr. 319-320.

[29] Tr. 320.

[30] Tr. 78-79.

[31] Tr. 75-76.

[32] Tr. 185, 188.

[33] Tr. 189.

[34] Tr. 165-166

disc spaces; intact pedicles; the normal paravertebral soft tissue; and an intact bony pelvis.[35] The diagnosis was lumbosacral strain.[36]

She reported to Baptist again on November 21, 2001, complaining of low back pain and was admitted to the hospital for 23 hour observation for possible fracture of the vertebra or pinched nerve.[37] The CT scan taken on November 22, 2001, revealed a focal soft tissue density to the left of the midline at L4-L5 which was felt to be a disc herniation with the study otherwise normal.[38] She was diagnosed with a sprain in the lumbar region.[39]

The records from the UT Medical Group from January 23, 2002 through November 20, 2002, track Plaintiff's pregnancy.[40] It was noted that she had Crohn's disease, complained of diarrhea, hemorrhoids, and back pain.

Plaintiff returned to Baptist on December 7, 2002, complaining she had back pain for the last three days and her leg was numb.[41] She was given Toradol and Decadron injections and prescribed Naprosyn and Skelaxin for lumbosacral strain.[42]

---

[35]Tr. 163.

[36]Tr. 165.

[37]Tr. 154-155.

[38]Tr. 156.

[39]Tr. 148.

[40]Tr. 82-116.

[41]Tr. 117, 118A.

[42]Tr. 118, 120-121.

Records from Dr. Eugene Shaneyfelt from two undetermined dates in 2001 and 2002, as well as six visits from November 1, 2002 through March 31, 2003, show diagnoses of Crohn's disease, muscle spasm, low back pain, hypertension, anxiety, insomnia, cough, and bronchitis.[43]

On February 1, 2003, Plaintiff received treatment from Baptist Hospital for low back pain caused from a trip and fall. She was prescribed Vioxx and Flexeril.[44]

A colonoscopy was performed on March 12, 2003.[45] The results were normal with no evidence of active Crohn's disease or inflammatory bowel disease.[46] Plaintiff was told to taper off the prednisone and eventually go off the sulfasalazine.[47]

In April 2003, Plaintiff was brought to Baptist Hospital's emergency room because she was found unresponsive. She was treated for overdosing on opiates and muscle relaxants.[48] The notes reflect that Plaintiff's "significant other" reported a history of taking pain pills and muscle relaxants.[49]

On August 8, 2003, Plaintiff was at Baptist complaining of knee pain radiating down her right leg after falling over an ironing board.[50] She was diagnosed with knee and leg sprain and given

---

[43]Tr. 194-198.

[44]Tr. 292-297.

[45]Tr. 190-193.

[46]Tr. 191.

[47]Id.

[48]Tr. 278-284.

[49]Tr. 276.

[50]Tr. 260.

an injection.[51]  AP and lateral view x-rays of the right knee were normal.[52]  Plaintiff received a steroid injection, on August 9, 2003, for the contusion of the right knee.[53]

Plaintiff was brought to the emergency room by ambulance on August 27, 2003 because she was found shaking after she had took her children to school.[54]  The diagnosis was right knee pain and overdose of pain medications.[55]  X-rays of the knee and CT scan of the head revealed no abnormalities.[56]  She received an injection for joint pain.[57]

Ronald Crow, O.D., completed a physical residual capacity assessment on January 17, 2003, which was affirmed by Dr. Linda Green on April 24, 2003.[58] Plaintiff was assigned the following capabilities: (1)  occasionally lift and/or carry up to 20 pounds; (2) frequently lift/carry 10 pounds; (2) stand/walk 6 hours in an 8 hour workday; (3) sit for  6 hours in an 8 hour workday; (4) unlimited push/pull; (5) no postural, manipulative, visual, communicative, or environmental limitations.

---

[51]Tr. 262.

[52]Tr. 263.

[53]Tr. 270.

[54]Tr. 243.

[55]<u>Id.</u>

[56]Tr. 250, 252.

[57]Tr. 251.

[58]Tr. 199-206.

**IV. The Commissioner's Final Decision**

Plaintiff has the burden of proving disability by establishing a physical or mental impairment lasting at least one year that prevents her from engaging in any substantial gainful activity.[59] The ALJ undertook the familiar five-step analysis,[60] and found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.[61] He also found that Plaintiff had a severe impairment of back pain, but she did not have an impairment severe enough to meet or equal the impairment "listings."[62]

The ALJ reviewed the objective medical evidence and evaluated Plaintiff's subjective complaints under the criteria set forth in Polaski v. Heckler.[63] He found Plaintiff's subjective allegations not to be entirely credible.[64]

---

[59]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Baker v. Apfel, 159 F.3d 1140, 1143 (8th Cir. 1998); Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

[60]The five-step sequential evaluation is as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C. F. R. §§ 416.920 and 404.1520. See Cox v. Barnhart, 345 F. 3d 606, 608 n. 1 (8th Cir. 2003).

[61]Tr. 13.

[62]Id. (See Appendix 1, Subpart P, Regulations No. 4 for the list of severe impairments.).

[63]These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Polaski v. Heckler, 739 F. 2d 1320, 1322 (8th Cir. 1984).

[64]Tr. 15.

The ALJ found that Plaintiff had no past relevant work, was a younger individual with limited education.[65] Relying on the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and physical capabilities, Plaintiff could make a successful adjustment to work that exists in significant numbers in the national economy, i.e., order clerk and small products assembler.[66] Therefore, the ALJ found that Plaintiff is not disabled.[67]

## V. Standard of Review

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.[68]

## VI. Plaintiff's Arguments

Plaintiff contends that the ALJ should have placed more weight of her testimony of chronic back and stomach problems. She argues that her testimony is supported by medical records establishing a history of complaints of low back pain, muscle spasm, and diarrhea. She also notes that the November 2001 CT scan showed a disc herniation in the lumbar spine.

---

[65] Id.

[66] Tr.16.

[67] Id.

[68] Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

Plaintiff maintains that a treating doctor's silence about her restrictions does not constitute substantial evidence of no disability. Plaintiff points out that her doctor was not asked to express an opinion about her restrictions, and has not discharged the her from treatment. She also asserts that her poor work history is consistent with her chronic health problems.

In addition, Plaintiff challenges the ALJ's findings regarding her residual functional capacities. She argues that physical ability is a medical question and the ALJ is required to consider at supporting evidence from a professional. Plaintiff contends that her abilities and restrictions were based on the opinions of a non-examining, non-treating consultant.

Plaintiff asserts that the ALJ erred in relying on the VE's testimony because the hypothetical findings were not supported by substantial medical evidence did not include her relevant impairments. In fine, Plaintiff maintains that she is incapable of performing light work.

**VII. Discussion**

The ALJ made a proper credibility analysis.[69] An ALJ may discredit subjective complaints of pain if they are inconsistent with the record as a whole.[70] The ALJ made a thorough review of the evidence and based his conclusion on the following: (1) no health care provider restricted Plaintiff from working;[71] (2) after November 2001 Plaintiff was not treated for complaints of back pain; (3) the colonoscopy conducted in March of 2003 was normal with no evidence of active Crohn's disease or inflammatory bowel disease; (4) there was no reference to any treatment or medication prescribed for anxiety following the March 3, 2002 complaint of panic attack; and (5)

---

[69] See, Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (ALJ not required to discuss each Polaski factor as long as analytical framework is recognized and considered).

[70] Barry v. Shalala, 885 F. Supp. 1224, 1225 (N.D. Iowa 1995).

[71] Baldwin v. Barnhart, 349 F.3d 549 (8th Cir. 2003).

there was evidence that Plaintiff had a poor work history; (6) Plaintiff's panic attack was a one time occurrence which did not result in medication or referral for mental health treatment.[72]

In fine, the Commissioner correctly found that the objective evidence from Plaintiff's treating doctors supports the ALJ's decision that Plaintiff does not have a disabling impairment.

Although Plaintiff may disagree, the hypothetical question submitted to the VE was consistent with the limitations that the ALJ found to be credible. A properly phrased hypothetical question, constitutes substantial evidence.[73]

**VIII. Conclusion**

After careful consideration of the record as a whole, the ALJ's decision was supported by substantial evidence and is AFFIRMED.

IT IS SO ORDERED this 27th day of September, 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[72]"The ALJ found that Matthews suffered from mild situational depression but that this impairment was not severe enough to preclude her from working. Matthews asserts that the ALJ erred in assessing the severity of her psychological impairment without any evidence to support this finding and that the Secretary should have ordered a consultative psychiatric examination. The regulations, however, do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (citations omitted).

[73]Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999).